## Laubscher v. Branthoover
### [Cite as 8 AOA 634]

Case No. 89-L-13-003
Lake County, (11th)
Decided December 31, 1990

*Wilbur N. Ischie, Midland Building, Suite 200, 10 West Erie Street, Painesville, Ohio 44077-3229, for Plaintiff-Appellee.*

*Robert A. Boyd, 75 Public Square, Suite 1200, Cleveland, Ohio 44113, for Defendant-Appellant.*

FORD, J.

Appellant, B & B Excavating Co., Inc., appeals from the trial court's judgment awarding appellee, Ralph Laubscher, ten percent of the company's profits on a sewer project pursuant to an oral employment contract and prejudgment interest.

Appellee was contacted in May 1986 by appellant's agent, defendant, David P. Branthoover (hereinafter "Branthoover"), regarding employment on one of appellant's projects. At the time of this initial contact, appellee was working on a bridge project in Cincinnati for National Engineering. Nevertheless, appellee scheduled an appointment to meet with Branthoover to discuss the offer of employment and subsequently stopped by Branthoover's Kirtland residence one Friday evening on his way home to Pennsylvania. Appellee's co-worker, Trenton Rodgers, who was sharing a ride home with appellee, witnessed the conversation that took place in Branthoover's kitchen regarding the terms of the job offer.

He claimed that Branthoover offered appellee a job as superintendent of appellant's "southerly sewer project" with the following compensation: $1,200/week salary, a truck and fuel, reimbursement of unusual expenses, hospitalization, and ten percent of the profits of the sewer project. The latter was the only term disputed by the appellant.

Appellee accepted the offer and commenced working for appellant in June 1986. Appellee performed his job well and aided in making the sewer project profitable for appellant. According to appellee, the bonus was discussed several times during the summer, at Christmas, and in early 1987. On Christmas 1986, appellee received a $2,000 bonus. However, according to appellee, when he later realized that appellant was not going to honor their agreement as to the profits of the project, appellee consulted with his attorney who subsequently sent a letter to Branthoover and appellant. On May 11, 1987, Branthoover received this letter regarding appellee's entitlement to ten percent of the profit of the project and confronted appellee. After a short exchange, Branthoover told appellee to consider Wednesday, May 13, 1987, his last day at work.

On June 17, 1987, appellee filed a complaint for breach of an oral employment contract and wrongful termination against Branthoover and appellant, B & B Excavating Co., Inc.

Appellee commenced discovery by attaching a set of interrogatories to the complaint. On January 13, 1988, appellee filed a notice of deposition and a request for the production and inspection of documents, *i.e.*, contracts for and all records pertaining to expenses and profits of the southerly sewer project.

On March 18, 1988, the trial court filed its pretrial order in which it set trial for May 2, 1988, and stated in part:

"***

"4. *All Adversary Proceedings*, including not limited to depositions, interrogatories, motions for production of hospital records, other motions for discovery, physical examinations are completed except:

"4(A) Nonjury - continuance may be filed if Plaintiff's PI trial goes forward in Cuyahoga County - Discovery problems exist, also."

On March 22, 1988, appellee filed a motion to compel and for sanctions pursuant

to Civ. R. 37. The trial court granted the motion to compel but denied sanctions. On July 22, 1988, appellee filed another notice of deposition and request for inspection and copying of documents. On August 1, 1988, appellant complied with the discovery request in part. On August 10, 1988, appellee filed another motion to compel and for sanctions which the trial court denied on September 12, 1988.

On Monday, October 31, 1988, the day of the trial, appellee filed a motion for a protective order asking the trial court to exclude the testimony of appellant's two expert witnesses whose names were supplied to counsel on the preceding Friday afternoon. The court granted appellee's motion and excluded appellant's two witnesses from testifying.

Based on the evidence at trial, which included testimony of Branthoover, Trenton Rodgers, the expert testimony of each party's accountant and various exhibits, the trial court found that a contract was formed between appellee and appellant which included a provision entitling appellee to ten percent of the sewer project. Based on the expert testimony of the respective accountants, the court determined ten percent of the profit to be $76,997.10.

On November 1, 1988, appellee filed a "Motion for Additional Interest Upon Judgment," pursuant to R.C. 1343.03, in which he requested ten percent per annum from the date of the accrual of the cause of action. Appellee argued that he was entitled to this prejudgment interest because appellant failed to comply with reasonable discovery requests and further acted in bad faith by failing to make an offer to settle the case.

Appellant filed an answer on November 25, 1988, in which it argued that it complied with all discovery requests and that there was a legitimate issue of controversy as to whether an oral contract existed between the parties and to the amount of profit on the sewage project. In addition, appellant's counsel asserted that failure of his client to authorize a settlement or capitulate to appellee's settlement demands, in light of the legitimate issues of controversy does not constitute bad faith.

On December 16, 1988, the trial court granted appellee's motion for prejudgment interest and entered judgment for appellee on the employment contract in the amount of $76,997, plus interest at ten percent per annum from the date of May 13, 1987. With respect to appellee's wrongful termination claim, the trial court entered judgment for appellant. Judgment was granted for defendant, David P. Branthoover, on both claims of the complaint.

Pursuant to appellant's motion, the execution of the judgment was stayed upon the posting of a supersedeas bond.

Appellant has filed a timely appeal raising the following assignments of error:

"1. The trial court erred when it granted Appellee's Motion for Protective Order which prohibited expert and factual witnesses of the Appellant from testifying.

"2. The trial court erred when it awarded Appellee prejudgment interest under Section 1343.03(C) of the Ohio Revised Code.

"3. The trial court's determination that a contract existed for the payment of ten percent of the Appellant's profits is against the manifest weight of the evidence."

In the first assignment of error, appellant argues that the trial court erred in granting appellee's motion for a protective order and excluding appellant's two expert and factual witnesses from testifying.

On the morning of the trial, appellee filed a motion for a protective order, seeking to exclude two of appellant's witnesses from testifying at trial. In support of the motion, appellee's counsel stated:

"Even though I have asked for discovery time and time again, I was just last Friday at 4:15 given the names of two new witnesses by counsel. This is certainly not sufficient time for me to conduct discovery of them."

In opposition to the motion, appellant's counsel retorted that *no formal discovery requests* were made for the names of appellant's witnesses. Therefore, there was no basis upon which the exclusion of the witnesses could be founded.

Nevertheless, the trial court granted the motion for protective order and excluded the witnesses, stating that the exchange of expert witnesses was due at the first pretrial. Appellant then requested that the witnesses be allowed as factual witnesses. This request was denied.

Appellant argues that, contrary to appellee's assertion that discovery was requested "time and time again," the identity of the witnesses was never requested through

the interrogatories filed nor by any order of the court. However, appellee maintains that, although there was never a formal request for such discovery, the parties discussed stipulating to a joint exhibit and a joint witness list at the March 15, 1988 pretrial hearing.

There is, however, no evidence of these discussions in the record. No stipulations were ever filed, and the trial court's March 18, 1988 pretrial order does not mention any stipulations or discovery of expert witnesses. Accordingly, appellee's reliance on these alleged stipulations must be rejected.

Thus, the issue becomes, whether, in the absence of interrogatories requesting, or a court order requiring the disclosure of a witness' identity, may a court issue a "protective order" excluding a witness from testifying because his identity was disclosed only shortly before trial. In order to address this question, an examination of the nature of protective orders is both instructive and appropriate.

The generic "protective order" may be used as a remedial sanction to eliminate the prejudicial effect of a failure to permit or provide discovery. The breadth of a trial court's ability to issue protective orders as a *remedial sanction* is not limited by Civ. R. 26(C) "Protective Orders." Civ. R. 26(C) applies only to situations where justice requires the methods of *discovery* to be limited so as to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The rule does not address the trial court's inherent power to *exclude witnesses from testifying at trial as justice requires.* Accordingly, Civ. R. 26(C) is inapplicable in the instant case.

The sole constraint on a trial court's ability to issue protective orders as a remedial sanction is that such orders must be "just." In this sense, they are analogous to sanctions imposed by Civ. R. 37. Civ. R. 37 authorizes the court to make "just" orders in response to violations of the discovery rules or court orders. Civ. R. 37(B)(2)(b) permits the following sanction:

*"An order *** prohibiting him [i.e.* the breaching party] *from introducing designated matters in evidence."* (Emphasis added.)

Thus, it is readily apparent that a court may exclude the testimony of witnesses, either through a protective order or an analo-gous Civ. R. 37(B) sanction, *when there has been a violation of the discovery rules or a court order compelling discovery.*

However, in the present case, the record does not reflect any such violation. There is no evidence, *in the record,* establishing the existence of interrogatories requesting the identity. of witnesses nor a court order compelling appellant to identify witnesses by a specific date.

In *Inner City Wrecking Co. v. Bilsky* (1977), 51 Ohio App. 2d 220, the Eighth Appellate District dealt with a situation substantially similar to the case *sub judice,* where the trial court excluded witness testimony pursuant to Civ. R. 37(B)(2)(b). The trial court imposed the sanction despite the absence of interrogatories requesting the names of witnesses or a court order compelling the disclosure of their identity. In reversing the decision of the trial court, the Eighth District noted:

"***, before a party or his counsel may be subject to the sanction of prohibiting his expert witness from testifying, pursuant to Civ. A. 37, such person or counsel *must be in default of an 'order,'* rendered by the trial court which is properly announced and formally entered.

"An examination of the record in the case at bar does not reveal any order of the court compelling appellant to answer interrogatories *** seeking to discover the name and testimony of his expert witness. Nor does the record contain a motion by the appellee for an order compelling appellant to answer such interrogatories. *Indeed, the record reveals that the appellee did not even submit interrogatories seeking to discover the name and expected testimony of appellant's expert witness." Inner City, supra,* at 225. (Emphasis added.)

Likewise, in the absence of the necessary interrogatories or court order compelling disclosure, the trial court in the instant case erroneously imposed the protective order excluding the two witnesses.

In reaching this conclusion, it is imperative to note that the vehicle implemented to excluded the testimony of the witnesses was a protective order, and not an order granted pursuant to a motion *in limine.* This is significant, as there is a functional distinction between protective orders/sanctions and motions *in limine* as they relate to preserving error for review on appeal.

Generally, "[a]n order granting or denying a motion *in limine* is a tentative, preliminary or presumptive ruling about an evidentiary issue that is anticipated but has not yet been presented in its full context." *State v. White* (1982) 6 Ohio App. 3d 1, paragraph two of the syllabus. Thus, ordinarily,[1] objection or proffer is required in order to preserve the error on appeal. *Id.* However, unlike a motion *in limine,* a protective order is a *permanent remedial sanction* which does not involve evidentiary issues. Therefore, an objection or proffer is unnecessary, as the context of the issuance is not something "to be developed at trial." Any claimed error involving the sanctions imposed by a protective order excluding the prospective testimony of the witnesses *will not be concerned with the testimony itself,* but with the conduct of the parties prior to the order's issuance. Accordingly, there is nothing for an objection or proffer to preserve.

Appellant's first assignment of error has merit.

In the second assignment of error, appellant argues that the trial court erred in awarding prejudgment interest under R.C. 1343.03(C), which provides:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on *tortious conduct* and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any part to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case." (Emphasis added.)

R.C. 1343.03(C) allows an award of prejudgment interest in a "civil action based on tortious conduct" where a party has failed to make a good faith effort to settle the *tort claim.* The provisions of R.C. 1343.03(C) do not apply to the case *sub judice* since it is a breach of contract action and not a tort action. See, *Roosa v. Stokes* (July 28, 1989), Portage App. No. 1976, unreported. Therefore, the trial court erred in granting prejudgment interest based on the parties' arguments under R.C. 1343.03(C).

We note that prejudgment interest may be awarded in a breach of contract action pursuant to R.C. 1343.03(A) where the amount due is liquidated. See, *Lewis v. Seiler* (Mar. 30, 1984), Trumbull App. No. 3300, unreported; *Allied Erecting & Dismantling Co. v. Auto Baling Co.* (Sept. 21, 1990), Trumbull App. No. 89-T-4237, unreported. However, neither party relied or made arguments based on the provisions of R.C. 1343.03(A) and, thus, it clearly was not considered by the trial court.

Accordingly, appellant's second assignment of error has merit.

In the third assignment of error, appellant argues that the court's finding that an oral contract existed for the payment of ten percent of the profits is against the manifest weight of the evidence.

Although appellant acknowledges that the court chose to accept as true appellee's testimony that the offer had been made, it argues that the record is replete with evidence that no such offer was made.

"***

"It is universally accepted that the jury, or the trial court where there is no jury, is the sole judge of the credibility of witnesses and of what weight is to be given their testimony. ***" *In re Lieberman* (1955), 163 Ohio St. 35, 38. See, also, *State v. DeHass* (1967), 10 Ohio St. 2d 230.

"***

"The law in Ohio is clear that an appellate court will not disturb the findings of the trier of fact unless they are against the manifest weight of the evidence. *Landis v. Kelly* (1875), 27 Ohio St. 567; *State, ex rel. Shady Acres Nursing Home, Inc., v. Rhodes* (1983), 7 Ohio St. 3d 7. Moreover, if the judgment of the trial court is supported by some competent, credible evidence, it will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O. 3d 261]; *State, ex rel. Shady Acres Nursing Home, Inc., supra.*" *Kinney v. Mathias* (1984), 10 Ohio St. 3d 72, 73-74.

A review of the record shows that appellee and Trenton Rodgers both testified that ten percent of the profit was a term of the employment contract. Clearly, the judgment is supported by competent, credible evidence and, thus, the third assignment of error is not well taken.

Based upon the foregoing analysis, the trial court's judgment is reversed and remanded as to the first and second assignments of error, and affirmed as to the third assignment of error.

CHRISTLEY, P.J., concurs with concurring opinion.

MAHONEY, J., dissents.

CHRISTLEY, P.J., concurring.

I concur with the holding of the first assignment for the sole reason that absent a formal discovery request or court order, there was no authority for the court to grant its "protective order" excluding the witnesses.

I concur with the second and third assignments in their entirety.

---

[1] We note that the Ohio Supreme Court has recognized that, under certain circumstances, a failure to object or proffer in response to the granting of a motion *in limine* does not constitute a waiver of its challenge. See, *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St. 3d 83, 86 n.5.