OPINION
 "1. The Court below erred by failing to strike testimony and enter the sanctions of liability and attorneys' fees based on the widespread discovery abuse of Defendant, Siemens Energy and Automation, Inc., (`Siemens').
 "2. The Court below erred by failing to order Siemens to produce responsive documents that Siemens admitted at trial it had not produced.
 "3. The Court below erred by failing to relieve Plaintiffs from the judgment on just terms and order a new trial based on Siemens' widespread discovery abuse, which foreclosed Plaintiffs from the full and fair preparation or presentation of their case.
 "4. The Court below erred by denying Plaintiffs' Motion to Strike Affirmative Defenses because Siemens waived its affirmative defenses.
 "5. The Court below erred by denying Plaintiffs' Motion to Strike because the defense of superseding cause was not warranted based on the evidence presented at trial.
 "6. The Court below erred by incorrectly stating the law in the jury charge on superseding cause."
The facts of this case are as follows. On August 17, 1993, David McKee was working at his regular job as a journeyman electrician for Buckeye Pipeline Company in Toledo, Ohio. At that time he was installing high-voltage switch gear for large pumps, which Buckeye used to pump petroleum products to various sites, and in so doing, installed a motor starter manufactured by Siemens. As McKee lifted the handle to connect the motor starter to its high voltage electrical source, the starter exploded, throwing open the doors of the starter's casing (the switchgear cubicle) and throwing McKee approximately six feet from the motor and into a wall. Although McKee was momentarily stunned by the explosion, he was able to escape the building in which he was working and thereafter worked for the remainder of the day. Later that evening, however, McKee's neck and back began to stiffen. The next day, McKee went to the hospital complaining of a headache and a bad case of nerves. At the trial below, McKee testified that since the explosion he has had back pain, hearing problems, psychological problems and has become unable to work around high-voltage electricity. A subsequent investigation revealed that the explosion occurred because two wires in the motor starter had been mistakenly crossed during the manufacturing process.
On August 8, 1995, appellants filed a complaint in the lower court against Siemens and ten John Does, asserting claims of negligence, strict liability and loss of consortium. Specifically, appellants alleged that the motor starter at issue was defective and that David McKee's injuries were caused by that defective motor starter. Siemens responded with an answer and ten affirmative defenses including the defense that McKee's injuries were caused by the superseding and intervening negligence of persons or parties over whom Siemens had no authority or control and that McKee failed to follow precautionary measures and instructions, and failed to follow safety regulations and guidelines and that these failures were the sole cause of McKee's injuries.
Thereafter, appellants served Siemens with a request for production of documents and their first set of interrogatories. Included therein was Request for Production No. 14 which reads:
 "Produce all documents which were generated or created as a result of any investigation, review or inspection of the motor starter by Siemens, or anyone acting on its behalf, subsequent to the explosion of the product on August 17, 1993"
Siemens' response reads:
 "Attached is the field service report (Bates Nos. 0062 to 0067[)].
 "Objection. This request improperly seeks information which is not discoverable pursuant to the attorney-client privilege and work product doctrine.
 "Without waiving the objection, there is a 2 page privileged and confidential accident report dated 8/27/93 prepared in anticipation of litigation."
The request also included Request for Production Nos. 22 and 23. Those requests read respectively:
 "Produce all documents which constitute, or which refer or relate to, or which were prepared in connection with, any complaints, problems, criticisms, lawsuits or injuries concerning the make and model of the motor starter which is the subject of this lawsuit."
 "Produce all documents which constitute, or which refer or relate to, or which were prepared in connection with, any complaints, problems, criticisms, or injuries concerning the motor starter which is the subject of this lawsuit."
Siemens answered "none" to each of those requests. Finally, Interrogatory No. 5 reads:
 "With respect to the affirmative defense set forth in paragraph 17 [superseding and intervening negligence] of Siemens' answer:
 "a) what is the name, telephone number and residential and business address of each person or entity whose superseding or intervening negligence Siemens' contends caused or contributed to cause David McKee's injuries; and
 "b) With respect to each person or entity set forth in your response to Interrogatory 5(a), what specific act(s) of negligence by that person or entity caused or contributed to cause David McKee's injuries?"
Siemens' answer directed appellants to see Siemens' preliminary response to the interrogatories. That response states that the affirmative defenses would be established during the course of discovery.
Subsequently, appellants filed an amended complaint which added a claim for punitive damages alleging that in designing, manufacturing and/or assembling the motor starter, Siemens exhibited a conscious disregard for the safety of other persons that had a great probability of causing substantial harm. Siemens did not file an answer to this amended complaint.
Prior to the trial below, both parties submitted trial briefs and proposed jury instructions. In its trial brief, Siemens clarified that while it admitted that the motor starter was defective, it denied that such defect proximately caused the injuries and damages alleged by appellants. Rather, Siemens asserted that McKee had back problems and a slight hearing loss prior to the accident and contested McKee's claim of psychological injuries. In its trial brief, Siemens did not raise the issue of superseding and intervening cause. In its proposed jury instructions, however, Siemens did propose instructions for intervening cause, superseding cause and superseding responsible cause. Additionally, prior to trial, appellants filed numerous motions including a motion to compel Siemens to produce its internal accident report prepared by Russell Ebersole after the accident at issue. Siemens' responded with a motion for a protective order.
The case proceeded to a jury trial on December 16, 1996. Appellants have only submitted a partial transcript of the trial for this court's review. Accordingly, we must presume the regularity of the trial court proceedings as to matters not included in the record. Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199. The relevant portions of that transcript reveal the following. Initially, the court heard outstanding motions, including appellants' motion to compel, and ordered Siemens to turn over the Ebersole report to appellants. The parties then proceeded to opening arguments. In its opening argument, Siemens admitted that the motor starter was defective but asserted that McKee's failure to follow the start-up procedures in the manual that accompanied the motor starter was the proximate cause of his injuries. Appellants objected and the court sustained the objection, ordering the parties not to argue the law. Appellants' counsel then directly examined McKee. McKee testified that at the time of the accident, he had been an electrician for fifteen years, was at that point a journey man electrician, and that he was one year away from becoming a master electrician, the highest level attainable in the electrical field. With regard to the accident, McKee set forth the events as stated above but added that all conduit systems and equipment at Buckeye Pipeline are designed to contain an explosion but that this explosion threw open the doors of the switchgear cubicle. He further testified that Buckeye had an independent motor shop examine all of the bus work, parallel feeders and cables to make sure that there were no shorts or grounds. He stated that the independent shop did a lot of the testing recommended by Siemens but that he did not pull apart the motor starter to examine the wires himself because that would have required him to disassemble part of the cubicle. At the time of the accident, he stated that he was standing in front of the door to the cubicle and had his hand on the T-handle. As he raised the T-handle to energize the motor starter, the cubicle exploded and all three doors on the cubicle opened. The doors hit him, throwing him approximately six feet into the wall across from the cubicle. McKee further testified as to his injuries. He admitted that he had a back problem prior to the accident and that he had just finished chiropractic treatments the day before the accident. He testified, however, that since the accident, he has had additional back pain which required him to undergo physical therapy and for which he must take pain medication. He denied, however, having a hearing problem prior to the accident. McKee stated that immediately after the accident, he began having problems working around electricity. In addition, he started having nightmares and began drinking too much. Because of these problems, McKee sought help through Buckeye's employee assistance program known as EASE. Through EASE, he spoke with Bob Lewis, a social worker, three times. Lewis taught him relaxation exercises and, after the three meetings, concluded that McKee was able to work around circuit breaker, or low voltage, panels without undue anxiety. At this time, however, McKee decided to apply for a supervisor's position so that he would no longer have to work around electricity. The supervisor's position had a higher salary level but did not allow McKee to make any overtime pay. Therefore, McKee stated, his income would ultimately be lower than it would be if he were to become a master electrician. In January 1994, McKee was made a supervisor. McKee did not seek any other psychological help until early in 1996 when he went to see Dr. Adler, a psychiatrist, upon the advise of his attorney. Finally, McKee testified that the accident damaged his hearing. He stated that since the accident he has had trouble hearing a conversation when there is a lot of background noise. He further admitted, however, that he often shoots clay pigeons as a hobby, although he stated that he does wear ear protection while doing so.
Subsequently, prior to appellee's cross-examination of McKee, appellants made what was essentially an oral motion inlimine asking the court to prevent appellee from questioning McKee as to what he failed to do prior to the accident. Appellants made numerous arguments as to why appellee should be prevented from raising the affirmative defense of superseding and intervening cause, including that they had been "sandbagged" in that appellee had not argued the defense in its trial brief. The court denied the motion, in part on the ground that appellants had raised the issue of McKee's testing of the motor starter on direct examination. Appellee then proceeded to cross-examine McKee. In particular, McKee admitted that prior to the explosion, he did not do any pre-energization testing of the motor starter. With regard to his injuries, McKee admitted that he never told his family doctor or any other doctor about the psychological problems he was having and that no doctor ever referred him to a psychiatrist.
Appellants next called Edmond Delahanty, Siemens' manager of quality assurance, as if on cross-examination. Delahanty testified that the motor starter at issue is known as the 81,000 series or medium voltage controller, that the explosion was caused by a cross in the wiring and that this problem had never happened before and has not happened since the explosion at issue herein. He further testified as to a number of tests that were conducted on the motor starter before it left Siemens' Raleigh, North Carolina plant and stated that he did not know why those tests failed to detect the cross wiring. He then stated, however, that the customer, Buckeye, had a duty to follow the instruction manual and to conduct various tests set forth in that manual prior to energizing the motor starter. Specifically, he identified two tests which Buckeye, and hence McKee, should have conducted: a pre-energization check and a dielectric test. Upon questioning by appellants' counsel, however, Delahanty stated that he was not the person who assisted Siemens' counsel in answering the request for production of documents and first set of interrogatories but that a man named Young Sin Kao, a Siemens' design engineer, assisted in that regard. He subsequently testified, however, that Kao speaks only broken English although he understands it well. Upon further questioning by appellants' counsel, Delahanty again stressed that he knew of no other explosions caused by crossed wires in motor starters but stated that any complaints would be directed to the customer service department. He further admitted, however, that, contrary to Siemens' answers to requests for production of documents Nos. 22 and 23, which sought any documents containing complaints or criticisms about the 81,000 motor starter and to which Siemens had answered "none," such documents did exist. Thereafter, Siemens produced those documents.
Next, appellants called Russell Ebersole to testify. At the time of the accident, Ebersole was Siemens' account manager for the Toledo sales office, although at the time of the trial below he was no longer employed by Siemens. Ebersole was also the individual who completed an accident report for Siemens after the explosion. Ebersole testified that while he was at Siemens the company had significant quality control problems, particularly with the 81,000 series motor starters manufactured by Siemens' Raleigh plant. He then testified about a report he had prepared in September 1993, which identified two other explosions in the northwest Ohio area in August 1993, caused by defective wiring of Siemens' products. Upon further questioning by appellants' counsel, it became clear that Siemens had not provided this and other reports prepared by Ebersole in response to appellants' request for production of documents. Another issue raised during Ebersole's testimony was whether Siemens had properly notified appellants of Ebersole's address. In answering an interrogatory regarding whether anyone from Siemens examined or investigated the motor starter at issue, Siemens directed appellants to Ebersole and listed his address as the company's Maumee, Ohio address. Those interrogatories were answered by Siemens in April 1996. At that time, Ebersole had already left the company and was living in Maryland. Ebersole testified that Siemens was well aware of his new address as of January 1996, because that was where his W-2 form was sent and that is where his quarterly statements for his 401K plan have been sent. Siemens never amended its answers to the interrogatories and only notified appellants of Ebersole's Maryland address four days before the trial.
At the conclusion of Ebersole's testimony, appellants moved, pursuant to Civ.R. 37(B)(2), that sanctions be entered against Siemens for discovery abuses. The grounds for the motion were Siemens' refusal to reveal Ebersole's address until four days before the trial and failure to provide appellants with documents regarding other complaints or problems with the motor starter at issue. The court denied the motion.
Appellants next called Kevin Hagar to testify. Hagar, an engineer with Buckeye Pipeline in Pennsylvania, was in the electrical equipment enclosure building at Buckeye in Toledo, along with McKee, when the accident occurred. Hagar testified that the motor starter was installed into its enclosure by a company in Texas whose name Hagar could not remember. Hagar stated that that company did a factory check on the motor starter and that he participated in that check. The check mainly consisted of checking the control system wires and Hagar testified that the test was accomplished without any problems. He also stated, however, that the test did not consist of checking the cables because they are part of the motor starter which he described as an "off the shelf" product with which they had great success in the past. Hagar further testified that he knew of no test which would determine whether the starter was miswired except for powering up the starter which, in the present case, is what precipitated the explosion. He then stated that the only way to check for continuity in the cabling was to "megor it," which he described as a three to five man day process. Hagar further testified that Buckeye never felt the need to engage in such a time consuming process because the motor starter had never before been a problem. He also stated, however, that Buckeye followed Siemens' start-up and check out procedures set forth in their manual verbatim and that nothing Buckeye did or failed to do led to the accident.
Finally, Edmond Delahanty, the manager of quality assurance at the Raleigh facility, testified again. On direct examination by the defense, Delahanty stated that the motor starter was subjected to numerous tests at the Raleigh facility before it was shipped, including a dielectric test which is intended to identify errors in wiring. After the accident, Siemens started doing continuity checks on the motor starters to identify wiring problems. He stated that the continuity test was not done prior to this accident because Siemens believed that the dielectric test could adequately detect such errors and because they had not had a similar wiring problem before. Delahanty then testified about the pre-energization check which is set forth in Siemens' manual covering the 81,000 motor starter. That check requires the operator, after installing the motor starter, to follow a nineteen-step procedure, including an electrical insulation resistance test, "to insure that the controller is free from short circuits and grounds[.]" Delahanty testified that the insulation resistance test takes approximately one and one-half hours to complete and that it would have detected the wiring error. Finally, Delahanty testified that Siemens only keeps customer complaint records for nine months. Accordingly, the complaint records which Siemens turned over to appellants earlier in the trial only went back as far as February 1996.
During the trial below, as the parties and the court were reviewing jury instructions, the parties engaged in arguments regarding the appropriateness of an instruction on superseding and intervening cause. Previously, appellants had asserted that appellee had waived the affirmative defense. During the arguments on the instructions, appellants then moved to dismiss their negligence claim so that only the claims of strict liability, loss of consortium and punitive damages would go to the jury. Appellants further asserted that the facts did not warrant an instruction on superseding and intervening cause. The court concluded that a very limited instruction on superseding cause should be included, to which appellants objected.
In submitting the case to the jury, the court also submitted interrogatories to be answered by the jury. After deliberating, the jury returned a verdict for Siemens. Specifically, seven of the eight jurors answered "no" to the following interrogatory: "Did the defect in the motor starter proximately cause injury or damage to plaintiff David McKee?" In response to the verdict, appellants filed a motion for relief from judgment, motion for a new trial and motion for judgment notwithstanding the verdict. In support of these motions, appellants argued that Siemens engaged in widespread discovery abuses, waived affirmative defenses and that the evidence did not show that a superseding act caused McKee's injuries. On April 16, 1997, the trial court filed an opinion and order denying the motions. It is from this order and the underlying jury verdict that appellants now appeal.
The fourth, fifth and sixth assignments of error all address the trial court's treatment of the issue of superseding cause. In their fourth and fifth assignments of error, appellants assert that the court erred in denying their motion to strike affirmative defenses because appellee waived those defenses and because the defense of superseding cause was not warranted by the evidence presented at trial. Appellants' sixth assignment of error then challenges the trial court's jury charge on superseding cause.
Where a products liability action is based on strict liability in tort for a manufacturing defect, the plaintiff must prove both the existence of the defect and that the defect was the proximate cause of the plaintiff's injuries. Lonzrick v.Republic Steel Corp. (1966), 6 Ohio St.2d 227. In such cases, however, "* * * the defense of intervening causation may be invoked to avoid liability where the intervening cause is unforeseeable and is the proximate cause of the injury or damage. Liability attaches to the person or persons whose acts or omissions proximately cause the injury or damage." R.H. Macy Co. v. OtisElevator Co. (1990), 51 Ohio St.3d 108, the syllabus. In Macy, the Supreme Court of Ohio concluded that in a products liability action based on strict liability in tort the jury could consider whether the plaintiff's own actions were an intervening, superseding cause of his own injuries.
Appellants assert that Siemens waived the affirmative defense of superseding cause because it failed to provide any facts in response to an interrogatory asking for facts in support of its defense of superseding cause, because it stated in pre-trial pleadings that it did not contest liability, and because it did not mention any affirmative defenses in its trial brief. While the record is clear that appellee did not provide a factual answer to Interrogatory No. 5 as set forth above, Siemens did respond to the request for production of documents. Request No. 6 reads:
 "Produce all documents which support Siemens' contention that David McKee's injuries were caused by the superseding and intervening negligence of persons or parties other than Siemens."
Siemens answered this request by directing appellants to its response to Request for Production No. 3. That response reads:
 "See entire instruction manual, attached and marked by Bates Nos. 0030-0060, MVC-9038. See also page 19, item 5 and 18. See warning label, Bates No. 00061. Others unknown at this time, will be supplemented upon discovery." Accordingly, Siemens notified appellants early on in the case that it was basing its affirmative defense of superseding and intervening cause on McKee's or others' failure to comply with the entire instruction manual. Appellants next direct us to Siemens' comment in a pre-trial memorandum regarding a motion for a protective order that Siemens "does not contest liability; it only contests damages" as support for its argument that Siemens waived its affirmative defenses. While Siemens may have loosely used the terms "liability" and "damages" in this memorandum, Siemens made its position clear in its trial brief with the statement: "Defendant Siemens admits that the motor starter was defective, but denies that such defect proximately caused the injuries and damages set forth in Plaintiff's [sic] Complaint." That is, although Siemens did not expressly discuss the affirmative defenses, it specified that proximate cause was to be a key issue at trial. In a products liability action based on strict liability in tort, superseding and intervening cause go directly to the issue of proximate cause.
Accordingly, Siemens did not waive its affirmative defense of superseding and intervening cause, and the fourth assignment of error is not well-taken.
In their fifth and sixth assignments of error, appellants assert that the trial court erred in instructing the jury on the affirmative defense of superseding and intervening cause because the evidence presented at the trial did not warrant such an instruction and that the instruction itself was erroneous.
It is well-established that "a trial court has discretion whether to give a requested jury instruction based on the dispositive issues presented during trial." Renfro v. Black
(1990), 52 Ohio St.3d 27, 30. Moreover, where there is sufficient evidence relating to an essential issue to permit reasonable minds to reach different conclusions on that issue, it is the duty of a trial court to submit that issue to the jury. Bostic v. Connor
(1988), 37 Ohio St.3d 144, 147. In Macy, supra at 111, the Supreme Court of Ohio approved the following instruction on superseding cause:
 "Causal connection is broken when a subsequent act, or failure to act, intervenes and completely removes the effect of the first act of negligence and is itself the proximate cause of the (injury) (damage). The causal connection of the first act of negligence is broken and superseded by the second, only if the intervening negligent act is both new and independent. The term `independent' means the absence of any connection or relationship of cause and effect between the original and subsequent act of negligence. The term `new' means that the second act of negligence could not reasonably have been foreseen."
In Macy, the plaintiff sued an elevator manufacturer and installer for indemnification for damages which the plaintiff paid to third persons who were injured by a falling ceiling panel in the elevator. The plaintiff alleged that the elevator unit was defective and dangerous and proximately caused the injuries.
At the trial, the defendant submitted evidence that the panel could not have fallen without human intervention, i.e. acts of a vandal or acts or omissions of the plaintiff's own personnel. In approving the above jury instruction, the court concluded that the instruction only allows the jury to consider whether the defendant proximately caused the injury or whether some other act or omission proximately caused the injury. The court also approved the instruction because it limited the jury to consider only those causes which could not be foreseen. Accordingly, it is well-established that the acts of a plaintiff in a products liability action based on strict liability in tort "may be found to constitute an intervening cause that permits the manufacturer or seller of a defective product to escape liability." Clark v.Snapper Power Equipment Co., Inc. (Nov. 18, 1993), Miami App. No. 93 CA 9, unreported.
In the present case, evidence at the trial revealed that McKee was a highly skilled electrician who failed to conduct the pre-energization procedures dictated by Siemens before energizing the motor starter. Delahanty testified that had McKee followed the pre-energization procedure, which takes approximately one and one-half hours, he would have detected the wiring problem. He further testified that doors enclosing the motor starter have latches on them, that those latches were tested by Underwriters' Laboratory, and that those tests revealed that the latches would keep the doors shut under a fault condition. McKee himself testified that all of the equipment at Buckeye was explosion proof. He further stated that he was injured by the doors which flew open upon the explosion. Accordingly, from this testimony, reasonable minds could reach different conclusions as to whether McKee's injuries were proximately caused by the motor starter defect or by his own failure to conduct the pre-energization test and failure to properly latch the doors. A jury instruction on superseding and intervening cause was, therefore, warranted.
In submitting this issue to the jury, the trial court instructed that jury as follows:
 "In order for the plaintiff to recover, he must prove by a preponderance of the evidence that the defective motor starter was the proximate cause of his injury. Proximate cause means that an act or failure to act by natural and continuous sequence directly produces the injury which would not otherwise have occurred. In other words, proximate cause means the result was both natural and foreseeable from the act or failure to act. Causal connection is broken when a later act or failure to act intervenes and completely removes the effect of the first act or failure to act and is in itself the cause of the injury.
 "A party is not responsible for injury or damage to another if that party's misconduct is a remote cause and not a proximate cause. A cause is remote when the result could not have been reasonably foreseen or anticipated as being the natural or probable cause of any injury."
Although this instruction does not follow the Macy instruction verbatim, in our view it accurately informed the jury of the issues it was required to determine. That is, what was the proximate case of McKee's damages, whether the causal connection between the motor starter defect and McKee's damages was broken, and whether Siemens could have reasonably foreseen that McKee would fail to follow the start-up procedures and/or fail to latch the door.
Accordingly, the fifth and sixth assignments of error are not well-taken.
In their first, second and third assignments of error appellants contend that Siemens engaged in widespread discovery abuses which required the trial court to grant appellants' motion for sanctions, strike the testimony of Edmond Delahanty and grant the motions for a new trial and for relief from judgment.
Appellants allege five specific instances of misconduct: that Siemens failed to provide appellants with Ebersole's address until several days before the trial; that Siemens failed to produce documents in response to requests for production Nos. 14, 22 and 23 which would have included Delahanty's notes of the Siemens' investigation of the accident and Ebersole's report that revealed two other explosions in August 1993 in the northwest Ohio area; that Siemens produced nothing that predated February 1996 and no other salesmen's reports similar to Ebersole's; and that Siemens regularly engaged in the destruction of documents. Appellants assert that upon discovering these discovery abuses during trial, they moved for sanctions pursuant to Civ.R. 37 and R.C. 2323.51, Ohio's frivolous conduct statute. The court denied the motion. Appellants then moved to compel Siemens to produce documents responsive to discovery to which Ebersole had referred (other salesmen's reports). The court also denied that motion. Finally, appellants moved to strike Delahanty's testimony when it became clear that Siemens had not produced his notes taken during the accident investigation. Again, the court denied the motion.
Civ.R. 37 permits a court to make "just" orders in response to violations of the discovery rules or court orders.Laubscher v. Branthoover (1991), 68 Ohio App.3d 375, 381. The decision to impose discovery sanctions is a matter within the sound discretion of the trial court. Toney v. Berkemer (1983),6 Ohio St.3d 455; Russo v. Goodyear Tire Rubber Co. (1987),36 Ohio App.3d 175, 178-79. However, "[t]he exclusion of reliable and probative evidence is a severe sanction and should be invoked only when clearly necessary to enforce willful noncompliance or to prevent unfair surprise." Nickey v. Brown (1982), 7 Ohio App.3d 32,34.
While it is apparent that Siemens was less than diligent in its obligation to respond to appellants' discovery requests, it is equally clear that the evidence which appellants claim they were denied went to the issue of whether the motor starter was defective, whether Siemens knew of problems with the model 81,000 motor starter, and whether the starter may have been related to other accidents or explosions. Siemens, however, admitted that the motor starter was defective and the jury concluded that the defect was not the proximate cause of McKee's injuries. Moreover, appellants were able to depose Ebersole prior to the trial and presented the jury with evidence, through Ebersole's testimony, of problems with production in Siemens' Raleigh, North Carolina plant. Because appellants have failed to establish how they were prejudiced by Siemens' discovery abuses, we cannot find that the trial court abused its discretion in denying appellants' motions to strike and for sanctions. The first assignment of error is therefore not well-taken.
In their second assignment of error, appellants contend that the trial court erroneously failed to order Siemens to produce responsive documents that it admitted at trial it had not produced. The request to which appellants refer, occurred on the fourth day of a five day trial after Ebersole had testified about monthly reports he would generate which also included problems with Siemens' products. Appellants requested that Siemens be required to produce the documents, including other salesmen's monthly reports, so that appellants could determine whether other customers had complained about the model 81,000 motor starter. The court denied the request apparently because of time concerns with the trial.
"Management of the discovery process lies solely within the sound discretion of the trial court and absent an abuse of that discretion, a decision granting or denying a discovery request will not be disturbed by the reviewing court." Glick v.Marler (1992), 82 Ohio App.3d 752, 758. Again, given that the jury concluded that McKee's injuries were not proximately caused by the defect motor starter, and given that the evidence which appellants sought dealt with other potentially defective motor starters, we cannot conclude that the trial court abused its discretion in denying appellants' request and the second assignment of error is not well-taken.
Finally, in their third assignment of error, appellants assert that the trial court erred in denying their motion for relief from judgment and motion for a new trial based on Siemens' widespread discovery abuses which, appellants claim, foreclosed them from the full and fair preparation or presentation of their case.
Civ.R. 59(A)(2) provides that a new trial may be granted upon a showing of misconduct by the prevailing party. The decision whether to grant or deny a motion for a new trial is left to the sound discretion of the trial court. Dawson v. MetroHealth Ctr.
(1995), 104 Ohio App.3d 654, 656. Accordingly, we will not reverse a trial court's ruling on a motion for a new trial absent a showing of an abuse of that discretion. Abuse of discretion connotes more than an error of law or judgment. It implies that the court's attitude is unreasonable, arbitrary or unconscionable.Cedar Bay Constr., Inc. v. Fremont (1990), 50 Ohio St.3d 19, 22. Similarly, Civ.R. 60(B)(3) provides that the trial court may relieve a party from a final judgment upon a showing of misconduct by the adverse party.
 "In order to prevail on a motion for relief from judgment pursuant to Civ.R. 60(B), the movant must demonstrate: (1) a meritorious claim or defense; (2) entitlement to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) timeliness of the motion." Rose Chevrolet, Inc. v. Adams (1988), 36 Ohio St.3d 17, 20, citing GTE Automatic Electric v. ARC Industries (1976), 47 Ohio St.2d 146, paragraph two of the syllabus.
The granting or denial of a motion for relief from judgment is a matter that is left to the sound discretion of the trial court and, therefore, will not be overturned on appeal absent a showing of an abuse of that discretion. Griffey v. Rajan (1987), 33 Ohio St.3d 75,77.
We first note that, despite appellants' protestations throughout the trial of appellee's discovery abuses, appellants never moved for a continuance or a mistrial. Moreover, during the trial, upon learning of certain documents that had not been provided to appellants during discovery, Siemens immediately had those documents faxed to appellants. Appellants then used those documents in the trial to attempt to prove that Siemens had quality control problems, knew that the motor starter was defective and chose to do nothing to resolve the problem. The jury, however, found Siemens' witnesses more credible and evidently concluded that McKee's failure to latch the cubicle door and failure to follow the required start-up procedures proximately caused his injuries. Under these circumstances, we cannot conclude that Siemens' alleged discovery abuses rose to the level necessary to deprive appellants of a fair trial. Accordingly, the trial court did not err in denying appellants' motions for a new trial and for relief from judgment and the third assignment is not well-taken.
On consideration whereof, the court finds that appellants were not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellants.
JUDGMENT AFFIRMED.
 Peter M. Handwork, P.J.
 George M. Glasser, J.
CONCUR.
James R. Sherck, J., concurs in part and dissents, in part.