OPINION
Appellant, Custom Countertop Kitchen, Inc., appeals the judgment entry of the Trumbull County Court of Common Pleas awarding appellees, Joseph Chester and his wife, $10,000 for defective cabinetry.
Appellees filed a complaint against appellant on January 6, 1994, requesting $15,000 in damages for breach of contract and negligence. Upon stipulation by both parties, the matter was referred to compulsory arbitration. In December 1995, the arbitrator filed his report and awarded appellees $10,500 for not having received the benefit of their contract for the installation of kitchen cabinetry. The arbitrator's report was appealed by appellant.
The matter was then referred to the magistrate for a hearing. In the magistrate's decision filed August 8, 1996, the magistrate found that appellees purchased a residence in Warren, Ohio, Trumbull County, with the expectation of completely remodeling the kitchen and eating area of the house. The house was determined to be among the more expensive homes in the community. In connection with the remodeling project, appellees hired Eeke Warzala (n.k.a. Eeke Cooper) ("Warzala") as their interior decorator. The magistrate further found that the undisputed evidence demonstrated that the price paid by appellees for the remodeled kitchen placed it in the highest range of kitchens in the area.
In May 1990, appellees contracted with Warzala to design and remodel the kitchen and eating area. Warzala recommended appellant for that project. Appellees agreed to have appellant install kitchen cabinets, countertops, backsplash, sink, faucets, garbage disposal and brass handles, and work began in June 1990. While the work was in progress, appellees voiced numerous concerns regarding the workmanship.
Appellees made all payments through Warzala, who then paid appellant. The magistrate determined that appellees paid Warzala the total sum of $12,430.99, although the proposal between Warzala and appellees indicated a total price of $12,532.65. The evidence revealed that Warzala paid appellant the total sum of $10,836, despite appellees' numerous concerns regarding the workmanship. Appellees also paid Warzala for custom wallpaper and matching draperies.
At the hearing, two separate experts testified in behalf of appellees and stated that the project was completed in a less than workmanlike manner and that it would reasonably cost $15,000 to have the work properly redone. Although appellant presented its own experts, it appears that the magistrate found that appellees' two experts were much more credible than appellant's. The magistrate, himself, viewed the premises after the conclusion of the hearing, without objection. The magistrate also determined that appellees made numerous attempts to have appellant correct the deficiencies, but appellant refused to acknowledge any problems other than minor adjustments.
In his conclusions of law, the magistrate stated that the duty to perform construction in a workmanlike manner is implied in any construction contract. Moreover, the magistrate determined that there was at least an implied contract between appellees and appellant since appellant was aware that their work was for the benefit of appellees and its representatives met with appellees in devising a design, coupled with the fact that they were chosen by appellees as the contractor to perform the work.
Consequently, the magistrate decided that appellees should be awarded compensatory damages in the amount of $10,000. Even though the cost to remodel the kitchen would be approximately $15,000, the magistrate reduced appellees' award to $10,000 because the cabinets, countertops, faucets, and brass handles that were installed had been used for six years and had some inherent value. Also, the magistrate decided that Warzala was equally liable for the damages on the basis that appellees relied on her recommendation of a contractor to help design the kitchen. In addition, appellees relied on her to monitor the workmanship. Accordingly, the magistrate decided that Warzala and appellant were jointly and severally liable.
Appellant timely objected to the magistrate's decision. However, in a judgment entry dated October 2, 1996, the trial court overruled the objections and adopted the magistrate's decision.
Appellees filed a motion with the trial court on October 15, 1997, requesting that the court issue a nunc pro tunc order that would supplement its October 2, 1996 judgment entry by awarding prejudgment and postjudgment interest at the rate of ten percent per annum beginning on October 30, 1990. The trial court responded to appellees' motion by issuing a nunc pro tunc judgment entry on December 9, 1997, which stated that interest on the $10,000 award will accrue at the rate of ten percent per annum beginning on October 30, 1990.
Appellant timely filed a motion to vacate the December 1997 judgment entry award of prejudgment interest. A hearing on the motion was held in July 1998. The trial court issued a judgment entry dated July 27, 1998, holding that its December 1997 entry was vacated because it failed to comply with Civ.R. 58(B) since the clerk was not directed to serve all parties with notice of the judgment, and the clerk, in fact, did not serve notice of the judgment upon either party.
A second hearing was held on the issue of prejudgment interest. On October 20, 1998, the trial court filed a judgment entry stating that Warzala and appellant were jointly and severally liable for the total amount of $10,000 plus interest accruing at the rate of ten percent per annum beginning on January 6, 1994. The court expressly stated that awarding appellant's prejudgment interest only from the date of judgment would be unjust. The court further wrote that prejudgment interest should not begin any earlier since appellees did receive some benefit from the use of the cabinets.
Appellant timely filed this appeal, and now asserts the following assignments of error:
 "[1.] The [t]rial [c]ourt erred in awarding [p]laintiff-[a]ppellees pre judgment [sic] interest because their motion was untimely.
 "[2.] The [t]rial [c]ourt erred in awarding [p]laintiff-[a]ppellees pre judgment [sic] interest as they had already been more than fully compensated."
Appellees filed a cross-appeal asserting that:
 "The [t]rial [c]ourt erred to the prejudice of the [a]ppellees/[c]ross-appellants by failing to award pre-judgment interest from the date of accrual of the claim, to wit: October, 1990 [sic]."
In the first assignment of error, appellant avers that a motion for prejudgment interest under R.C. 1343.03(C) must be filed no later than fourteen days beyond the entry of judgment pursuant to the holding in Cotterman v. Cleveland Elec.Illuminating Co. (1987), 34 Ohio St.3d 48, 50. Appellant further argues that since appellees' motion for prejudgment interest was filed over one year after the final appealable order issued on October 2, 1996, the trial court erred in awarding any prejudgment interest.
A claim for prejudgment interest will be governed by either R.C. 1343.03(A) or (C), depending on whether the claim is contract based or tort based. Laubscher v. Branthoover (1991), 68 Ohio App.3d 375,383; R.C. 1343.03. See, generally, Royal Elec.Constr. Corp. v. Ohio State Univ. (1995), 73 Ohio St.3d 110;Cotterman, 34 Ohio St.3d 48; Martin v. Cincinnati Ins. Co. (May 14, 1999), Logan App. No. 8-98-31, unreported, at 7-8, 1999 Ohio App. LEXIS 2455. R.C. 1343.03(A) applies to contract based claims, while subsection (C) only applies to tort based claims.Branthoover, 68 Ohio App.3d at 383.
In the instant matter, the magistrate decided that: (1) there was "at least an implied contract" between appellant and appellees; (2) in any "construction contract" there is a duty to perform in a "workmanlike manner"; (3) the duty to perform in "a workmanlike manner sounds in tort" but actually functions as a "warranty"; (4) the workmanship standards in a construction contract must be governed by industry standards and the agreement of the parties, and (5) "the parties in this case contracted for a `Lexus' but were delivered a `Chevette.'" Additionally, the trial court expressly adopted the magistrate's findings of fact and conclusions of law. Based on these facts, it is clear that the trial court granted prejudgment interest on appellees' breach of contract claim, rather than their negligence claim.
Appellant is correct in arguing that pursuant to the holding inCotterman, 34 Ohio St.3d at paragraph one of the syllabus, an R.C.1343.03(C) motion for prejudgment interest must be filed no later than fourteen days after the entry of judgment. However, we are aware of at least two other appellate court districts which have concluded that the fourteen-day time limit expressed in Cotterman
is inapplicable to a motion for prejudgment interest under R.C.1343.03(A). Martin, supra, unreported, at 17; Oakar v. FarmerIns. of Columbus, Inc. (Aug. 6, 1998), Cuyahoga App. No. 73076, unreported, at 5, 1998 Ohio App. LEXIS 3630.
In Martin, supra, unreported, at 17-18, the Third District Court of Appeals affirmed the award of prejudgment interest on a contract claim even though the motion was filed nearly three months after the settlement of the matter. In Oakar, supra, unreported, at 6-7, the appellant's motion for prejudgment interest under R.C. 1343.03(A) was considered timely, despite the fact that it was filed with the trial court one day after the forty-five day deadline had elapsed to file an appeal from it to the Supreme Court of Ohio.
In Oakar, the court noted that the fourteen-day period to file a motion for prejudgment interest under R.C. 1343.03(C) was established in Cotterman because the Supreme Court of Ohio concluded that the language in that provision was similar to post-trial motions under the Civil Rules, which were required to be filed no later than fourteen days after the applicable entry of judgment. Id. at 4-5. The Oakar court declined to apply the fourteen-day rule developed in Cotterman to motions filed pursuant to R.C. 1343.03(A), since that provision does not contain parallel language to that written in R.C. 1343.03(C) or the Civil Rules.Id. at 5.
In our review of R.C. 1343.03(A), Cotterman, Oakar, and Martin, we conclude that the reasoning of Cotterman is inapplicable to a contract-based motion for prejudgment interest. However, the time to file a motion for prejudgment interest under R.C. 1343.03(A) must still comport with concepts of reasonableness, as does the trial court's granting of such interest. The premise that an award of prejudgment interest under subsection (A) must be made within a reasonable time of the prior final judgment in the matter, despite the fact that no time limit is set forth in the statute, results from applying the general rules pertaining to statutory construction and court powers. In support of this proposition, R.C. 1.47, a statutory rule of construction, states, "[i]n enacting a statute, it is presumed that: * * * (C) [a] just and reasonable result is intended; * * *." Moreover, the Supreme Court of Ohio has held that a court's power to correct its prior orders and judgments must be done within a reasonable time:
 "`Independent of statutory provisions and notwithstanding the general rule limiting the court's authority over judgments to the term at which they were rendered, it has power to correct nonjudicial mistakes in its proceedings and may annul within a reasonable time, orders and judgments inadvertently or improvidently made.'" In re Estate of Gray (1954), 162 Ohio St. 384, 390.
Finally, further support for a reasonableness requirement is achieved by acknowledging that the "integrity of the judicial system rests upon the conclusiveness and finality of judgments. The parties to an adversary proceeding must be able to rely upon the judgment once it has been entered * * *."Haendiges v. Widenmeyer Elec. Constr. Co. (1983),9 Ohio App.3d 37, 38. In Bullock v. Kilgour (1883),39 Ohio St. 543, 545, the court held that a final judgment is conclusive upon all matters and parties to an action "upon the principle that the public good requires a limit to litigation."
In regard to the claim that the motion for prejudgment interest was untimely, appellant has failed to provide this court with any supporting evidence or argumentation that the fourteen-day rule ofCotterman should be extended to motions for prejudgment interest filed under R.C. 1343.03(A). Furthermore, we are in agreement with Martin and Oakar, which held that the fourteen-day limit expressed in Cotterman is inapplicable to a motion for prejudgment interest under R.C. 1343.03(A). Consequently, we disagree with appellant's assertion that appellant's motion was untimely underCotterman, since that case was limited solely to addressing motions under R.C. 1343.03(C).
Although the rule of law established in Cotterman is inapplicable in the case sub judice, in our view, appellees' motion for prejudgment interest, and the trial court's decision to grant such interest, must produce a reasonable result, as mandated by R.C. 1.47. Specifically at issue in this case is whether the award of interest was made within a reasonable time. Importantly, appellees fail to indicate why they waited nearly one year and two weeks after the trial court's final judgment in their favor to file a motion for prejudgment interest. Additionally, the magistrate's recommendations and the trial court's October 2, 1996 judgment entry do not mention prejudgment interest or indicate that it was a component of appellees' $10,000 damages award.
Finally, the trial court's nunc pro tunc order allowing prejudgment interest, on the basis that it would fully compensate[1] appellees, is in contradiction to its earlier award in which it determined that they had been damaged only in the amount of $10,000, and not the $15,000 requested. Thus, there is further indication that the award of prejudgment interest was not contemplated by appellees or the court until approximately one year after the final judgment entry was filed.
Thus, by reviewing the facts of this case in their entirety, it is this court's conclusion that appellees' motion for prejudgment interest was not filed within a reasonable time from the trial court's October 2, 1996 final judgment entry. This decision is supported by the principles advanced in R.C. 1.47, In re Estate ofGray, Haendiges, and Kilgour. Therefore, appellant's first assignment of error is well-founded.
On the basis of this court's reasoning provided for in addressing the first assignment of error, appellant's second assignment of error is well-taken, while appellees' cross-appeal is without merit. Also, we deem it unnecessary to review or comment on the propriety of using the nunc pro tunc entry for the express purpose that it was utilized under the circumstances of this case in reaching our mandate here.
For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is reversed and judgment is entered for appellant.
CHRISTLEY, J., concurs in judgment only with Concurring Opinion,
O'NEILL, J., concurs.
[1] In Royal Elec. Constr. Corp. v. Ohio State Univ.
(1995), 73 Ohio St.3d 110, 116, the court held that "in determining whether to award prejudgment interest pursuant to * * * [R.C.] 1343.03(A), a court need only ask one question: Has the aggrieved party been fully compensated?" Royal Elec. established the standard that prejudgment interest only is to be awarded in order to fully compensate a prevailing party.
 CONCURRING OPINION